IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Global Infrastructure Finance and Development Authority Inc. *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>CUSIP Global Services and FactSet Research Systems Inc.,<br><br>Defendants. | **Case No. 1:26-CV-00495**<br><br>**(Judge Neary)**<br><br>**DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO DISMISS THE FIRST AMENDED COMPLAINT** |

# TABLE OF CONTENTS


**INTRODUCTION** ........ 1

**BACKGROUND** ........ 3

- **A. Financial Identifiers, CUSIPs, and the Parties.** ........ 3
- **B. GIFDA Requests CUSIP Identifiers for the Additional Plaintiffs.** ........ 6
- **C. Plaintiffs' Alleged Harm and Barriers to Entry in the Relevant Market.** ........ 8

**PROCEDURAL HISTORY** ........ 10

**STATEMENT OF QUESTIONS INVOLVED** ........ 11

**LEGAL STANDARD** ........ 11

**ARGUMENT** ........ 14

- **I. Plaintiffs Fail to Plead a Cognizable Antitrust Claim.** ........ 14
  - **A. CGS Has No Antitrust Duty to Deal with Plaintiffs.** ........ 14
  - **B. Plaintiffs Have Not Alleged Antitrust Standing.** ........ 20
  - **C. Plaintiffs Do Not Allege that CGS or FactSet Has Monopoly Power in a Properly Defined Relevant Market.** ........ 24
- **II. The Additional Plaintiffs Lack Article III Standing.** ........ 27
- **III. Plaintiffs' Common Law Claims Also Fail.** ........ 30
  - **A. The Amended Complaint Does Not Plausibly Allege Tortious Interference.** ........ 30
  - **B. The Amended Complaint Does Not Plausibly Allege Breach of Implied Contract.** ........ 31
- **IV. CGS Is Still Not an Appropriate Defendant.** ........ 32
- **V. Plaintiffs' Complaint Should Be Dismissed with Prejudice.** ........ 33

**CONCLUSION** ........ 34

## TABLE OF AUTHORITIES

### CASES

*44 Hummelstown Assocs., LLC v. Am. Select Ins. Co.*,
542 F. Supp. 3d 330 (M.D. Pa. 2021)....................................................33

*A&B Campbell Fam. LLC v. Williams Partners, L.P.*,
2025 U.S. Dist. LEXIS 263398 (M.D. Pa. Dec. 22, 2025) ..........................20

*Acumed LLC v. Advanced Surgical Services, Inc.*,
561 F.3d 199 (3d Cir. 2009) ....................................................................31

*AlfaModess Logistics, LLC v. Catalent Pharma Sols., LLC*,
2014 U.S. Dist. LEXIS 128469 (E.D. Pa. Sept. 11, 2014)..................... 31, 31

*Alston v. Parker*,
363 F.3d 229 (3d Cir. 2004) ....................................................................33

*Alvin v. Suzuki*,
227 F.3d 107 (3d Cir. 2000) ....................................................................33

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)............................................................................ 11, 12

*Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*,
472 U.S. 585 (1985)....................................................................... 15, 16, 18

*Baraka v. McGreevey*,
481 F.3d 187 (3d Cir. 2007) ....................................................................12

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)..................................................................................11

*Blue Shield of Virginia v. McCready*,
457 U.S. 465 (1982)............................................................................ 22, 23

*Brokerage Concepts, Inc. v. U.S. Healthcare, Inc.*,
140 F.3d 494 (3d Cir. 1998) ....................................................................26

*Camaisa v. Pharm. Rsch. Assocs.*,
2022 U.S. Dist. LEXIS 50803 (D. Del. Mar. 22, 2022) ................................23

*Chi. Pro. Sports Ltd. P'ship v. Nat'l Basketball Ass'n*,
961 F.2d 667 (7th Cir. 1992) ..........................................................................21

*Const. Party of Pa. v. Aichele*,
757 F.3d 347 (3d Cir. 2014) ...........................................................................13

*Crossroads Cogeneration Corp. v. Orange & Rockland Utils., Inc.*,
159 F.3d 129 (3d Cir. 1998) ...........................................................................26

*Cummings v. Allstate Ins. Co.*,
832 F. Supp. 2d 469 (E.D. Pa. 2011)...............................................................31

*Dinosaur Fin. Grp. LLC v. S&P Glob., Inc.*,
2023 U.S. Dist. LEXIS 122036 (2023) ..................................................... 19, 20

*Eichorn v. AT&T Corp.*,
248 F.3d 131 (3d Cir. 2001) ...........................................................................22

*Fowler v. UPMC Shadyside*,
578 F.3d 203 (3d Cir. 2009) ..................................................................... 12, 18

*Godo Kaisha IP Bridge 1 v. TCL Comm'n Tech. Holdings Ltd.*,
2018 U.S. Dist. LEXIS 246890 (D. Del. Feb. 12, 2018)...............................25

*Godo Kaisha IP Bridge 1 v. TCL Comm'n Tech. Holdings Ltd..*,
2018 U.S. Dist. LEXIS 38506 (D. Del. Mar. 8, 2018)..................................25

*Griffin v. Petrucci*,
2024 U.S. Dist. LEXIS 193199 (M.D. Pa. Oct. 24, 2024)..............................8

*Hanover 3201 Realty, LLC v. Village Supermarkets, Inc.*,
806 F.3d 162 (3d Cir. 2015) ...........................................................................22

*Host Int'l, Inc. v. MarketPlace, PHL, LLC*,
32 F.4th 242 (3d Cir. 2022) ....................................................................*passim*

*Hudson's Bay Co. Fur Sales, Inc. v. Am. Legend Cooperative*,
651 F. Supp. 819 (D.N.J. 1986)....................................................................26

*Ideal Dairy Farms, Inc. v. John Labatt, Ltd.*,
90 F.3d 737 (3d Cir. 1996) ........................................................................17

*In re Fed.-Mogul Glob. Inc.*,
411 B.R. 148 (Bankr. D. Del. 2008)..............................................................32

*In re Lower Lake Erie Iron Ore Antitrust Litig.*,
998 F.2d 1144 (3d Cir. 1993) .....................................................................13

*In re NVIDIA Corp. Sec. Litig.*,
768 F.3d 1046 (9th Cir. 2014) .....................................................................4

*Int'l Plastics & Equip. Corp. v. HPM*,
2008 U.S. Dist. LEXIS 68520 (W.D. Pa. Aug. 7, 2008)..............................32

*Irish v. Ferguson*,
970 F. Supp. 2d 317 (M.D. Pa. 2013).........................................................22

*Kerwin v. Parx Casino*,
802 F. App'x 723 (3d Cir. 2020)...................................................................17

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992)......................................................................................28

*Mathias v. Kershaw*,
2010 U.S. Dist. LEXIS 30163 (M.D. Pa. Mar. 29, 2010) ............................33

*Matthews v. Lancaster Gen. Hosp.*,
87 F.3d 624 (3d Cir. 1997) ..........................................................................20

*Maude v. City of Philadelphia*,
2018 U.S. Dist. LEXIS 243518 (E.D. Pa. Oct. 25, 2018) ............................32

*MCI Communications Corp. v.. Am. Tel. & Tel. Co.,*
708 F.2d 1081 (7th Cir. 1983) ........................................................ 10, 17, 18

*McLoughlin v. Cantor Fitzgerald L.P.*,
162 F.4th 378 (3d Cir. 2025) ....................................................................12

*Medpointe Healthcare Inc. v. Hi-Tech Pharmacal Co.*,
380 F. Supp. 2d 457 (D.N.J. 2005)..............................................................19

*Morrow v. Balaski*,
719 F.3d 160 (3d Cir. 2013) ......................................................................18

*Murphy v. Thomas Jefferson Univ. Hosps., Inc.*,
2025 U.S. Dist. LEXIS 260338 (E.D. Pa. Dec. 16, 2025) ............................13

*Mylan Pharms. Inc. v. Warner Chilcott Pub. Ltd.*,
838 F.3d 421 (3d Cir. 2016) ......................................................................18

*Otter Tail Power Co. v. United States*,
410 U.S. 366 (1973)...................................................................................16

*Pac. Bell Tel. Co. v. linkLine Commc'ns, Inc.*,
555 U.S. 438 (2009)...................................................................................14

*Phila. Taxi Ass'n v. Uber Techs., Inc.*,
218 F. Supp. 3d 389 (E.D. Pa. 2016)..........................................................30

*Phila. Taxi Ass'n v. Uber Techs., Inc.*,
886 F.3d 332 (3d Cir. 2018) ...................................................... 13, 15, 20, 27

*Prime Aid Pharm. Corp. v. Humana Inc.*,
2017 U.S. Dist. LEXIS 125667 (D.N.J. Aug. 9, 2017) ................................26

*Prukala v. Chase Bank, N.A.*,
2020 U.S. Dist. LEXIS 162352 (M.D. Pa. Sept. 4, 2020)............................33

*Pryor v. Nat'l Collegiate Athletic Ass'n*,
288 F.3d 548 (3d Cir. 2002) ........................................................................8

*Queen City Pizza v. Domino's Pizza*,
124 F.3d 430 (3d Cir. 1997) ......................................................... 12, 24, 25

*Schuylkill Energy Res. v. Pa. Power & Light Co.*,
113 F.3d 405 (3d Cir. 1997) .................................................................. 14, 24

*SEC v. Mathias*,
No. 1:25-cv-02313 (D.D.C. filed July 18, 2025) ..........................................29

*SEI Glob. Servs., Inc. v. SS&C Advent*,
496 F. Supp. 3d 883 (E.D. Pa. 2020)...................................................... 16, 17

*Spectrum Sports, Inc. v. McQuillan*,
506 U.S. 447 (1993)...........................................................................................33

*Susan B. Anthony List v. Driehaus*,
573 U.S. 149 (2014)...........................................................................................27

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007).............................................................................................4

*Tugboat Invs. LLC v. Bank of Am., N.A.*,
2023 U.S. Dist. LEXIS 38184 (E.D. Pa. Mar. 6, 2023) ......................... 27, 27

*U.S. Steel Corp. v. Fortner Enters.*,
429 U.S. 610 (1977)...........................................................................................26

*United States v. Colgate & Co.*,
250 U.S. 300 (1919)..................................................................................... 1, 2, 14

*United States v. E.I. du Pont de Nemours & Co.*,
351 U.S. 377 (1956)...........................................................................................24

*United States v. Microsoft Corp.*,
253 F.3d 34 (D.C. Cir. 2001)..............................................................................18

*United States v. Terry*,
2023 U.S. Dist. LEXIS 163609 (W.D. Pa. Sept. 14, 2023) ..........................29

*Verizon Commc'ns, Inc. v. Law Offs. of Curtis V. Trinko, LLP*,
540 U.S. 398 (2004)............................................................... 12, 14, 15, 18

*Warnock v. NFL*,
154 F. App'x 291 (3d Cir. 2005)....................................................................23

**CONSTITUTIONAL PROVISIONS**

U.S. Const. Art. III § 2....................................................................................13

**FEDERAL STATUTES**

Title 15 U.S.C. § 2 ..........................................................................................12

Title 15 U.S.C. § 15 ........................................................................................13

**FEDERAL RULES**

Fed. R. Civ. P. 12 ............................................................................ 11, 13, 17, 20

Fed. R. Civ. P. 17(b) .......................................................................................32

**OTHER AUTHORITIES**

Restatement (Second) of Torts § 768...............................................................31

## INTRODUCTION

Plaintiffs' First Amended Complaint for Injunctive Relief, Damages, and Declaratory Judgment (ECF No. 31, hereinafter "FAC") is a second bite of the apple, yet still fails. After having the benefit of Defendants' original motion to dismiss (ECF Nos. 23, 24) and opposition to the motion for preliminary injunction (ECF No. 22)—both of which provided a catalog of the initial complaint's legal deficiencies—Plaintiffs still fail to allege any cognizable antitrust or common law claims.[1] The Court should now dismiss this action with prejudice.

Contradicting over a hundred years of antitrust law, Plaintiffs continue to allege that CGS denying a customer's request for certain CUSIP identifiers violates the antitrust laws. To the contrary, black-letter law recognizes a firm's "right . . . to exercise [its] own independent discretion as to parties with whom [it] will deal. And, of course, [it] may announce in advance the circumstances under which [it] will refuse to sell." *United States v. Colgate & Co.*, 250 U.S. 300, 307 (1919). Plaintiffs ask this Court to ignore more than a century of settled law emanating from *Colgate* and to take the extraordinary step of compelling CGS to issue CUSIP identifiers to a single customer—Global Infrastructure Finance and Development Authority Inc. ("GIFDA").

---

[1] The term "Defendants" includes CUSIP Global Services ("CGS") and FactSet Research Systems Inc. ("FactSet").

Plaintiffs' reliance on the narrow exceptions to *Colgate*—namely, a purported "duty to deal" or "essential facility" claim—remains misplaced. Such claims are cognizable only when a firm denies a *competitor* or *potential competitor* access to a product necessary to compete *against the denying firm*. Even then, such claims are limited to rare circumstances, and Plaintiffs' claims do not come close to meeting these stringent standards. Based on its own allegations, GIFDA, an alleged "economic development entity," does not compete *in any way with CGS* (which "assign[s] securities identification numbers") or FactSet which "operates CGS." FAC ¶¶ 11, 17-18. Nor is GIFDA a *potential* competitor. The FAC does nothing to fix this fundamental deficiency, and the five Additional Plaintiffs are all alleged public works project developers.[2] Neither GIFDA nor the Additional Plaintiffs allege any plan to dramatically pivot their current lines of business to compete in the market for the issuance of securities identifiers. That fatal deficiency was apparent from the face of the original complaint, and the FAC's failure to address it compels dismissing Plaintiffs' antitrust claims with prejudice.

But there are additional problems with Plaintiffs' allegations. Specifically, Plaintiffs fail to plead the most fundamental elements of an antitrust claim. Beyond

[2] Additional Plaintiffs are Ameri Metro, Inc. ("Ameri Metro"), Malibu Homes, Inc. ("Malibu Homes"), Atlantic Energy Product & Utility Inc. ("Atlantic Energy"), HSR Freight Line, Inc. ("HSR Freight Line"), and HSR Technologies, Inc. ("HSR Technologies").

mere conclusory allegations and out-of-context, mischaracterized caselaw (i.e., not factual allegations), Plaintiffs do not allege (1) harm to competition in a properly defined relevant antitrust market, or (2) that CGS has substantial market power in such a market.

Additionally, all Plaintiffs lack antitrust standing because they either only allege harm to themselves—and thus fail to allege injury to competition—or, in the case of the Additional Plaintiffs, only allege indirect and derivative injuries. The Additional Plaintiffs also fail to allege Article III standing because their alleged harm, an inability to finance supposed investment projects, cannot be redressed by granting CUSIP identifiers to Plaintiff GIFDA.

Plaintiffs' common law claims fare no better. For one, the tortious interference claims are entirely duplicative of the deficient monopolization allegations. And the implied contract claim fails outright: GIFDA submitting an application constitutes an offer. It was never accepted, and, thus, no contract (for any plaintiff) was formed. This case should be dismissed in its entirety with prejudice.

## BACKGROUND

### A. Financial Identifiers, CUSIPs, and the Parties.

Financial identifiers are unique alphanumeric codes used to identify financial instruments (also referred to as "securities"). *See* FAC ¶ 31. The CUSIP (Committee on Uniform Securities Identification Procedures) is an identifier for certain types of

financial instruments that are issued in the United States and Canada. *See id.* Other financial identifiers include at least the FIGI, SEDOL, ISIN, and Ticker symbol. *Id.* ¶¶ 36(f), 58.

CGS operates the CUSIP system pursuant to a longstanding license from the American Bankers Association. *Id.* ¶ 17. CGS engages in two lines of business: (1) issuing CUSIPs to requesters who meet eligibility requirements and (2) licensing databases that incorporate the CUSIP data to financial institutions. *See* Decl. of G. Faulkner, ECF No. 22-4 ¶ 5.[3] FactSet acquired CGS in 2022. FAC ¶ 17. The complaint alleges that FactSet is "responsible for CGS's operations," including "CUSIP issuance." *Id.* ¶ 18.

Plaintiff GIFDA claims to be a 501(c)(3) organization that "functions as a non-profit development entity with a focus on financing, acquiring, constructing, operating, managing, and maintaining significant infrastructure projects." *Id.* ¶ 11. GIFDA does not issue financial identifiers, license financial data, or compete with CGS or FactSet in any market relevant to this case. *See id.* GIFDA alleges that it has secured state authorization to develop infrastructure projects, including those for

---

[3] Plaintiffs rely heavily on the Declaration of Gerard Faulkner (ECF No. 22-4). *E.g.*, FAC ¶¶ 47, 53-55. Thus, by "relying on portions of it in their complaint, [the Court] may properly consider the declaration in its entirety." *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1065 n.10 (9th Cir. 2014) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)).

transportation systems, but the pleadings include no such authorization. *See id.* ¶¶ 11, 39a-c (listing various state bills and resolutions, none of which name GIFDA or any of the Additional Plaintiffs).

The five Additional Plaintiffs are all customers of GIFDA. *See id.* ¶ 12 (Ameri Metro claims to be a "'Horizontal and Vertical Site Improvements Developer' in each Master Trust Indenture issued by GIFDA"); *id.* ¶ 13 (Malibu Homes claims to be engaged in "residential and commercial real estate development," and GIFDA is its "Direct Issuer" for certain bonds); *id.* ¶ 14 (Atlantic Energy claims to be "engaged in energy and utility infrastructure development," and GIFDA is its "Direct Issuer" for certain bonds); *id.* ¶ 15 (HSR Freight Line claims to be "organized for the purpose of financing, acquiring, constructing, operating, managing, and maintaining high-speed rail systems for freight transportation within certain rail corridors in the United States," and GIFDA is its "Direct Issuer" for certain bonds); *id.* ¶ 16 (HSR Technologies claims it "is organized for the purpose of developing, manufacturing, deploying, and maintaining technology systems and infrastructure for high-speed rail and related transportation, telecommunications, energy, and industrial services," and GIFDA is its "Direct Issuer" for certain bonds). As alleged in the FAC, none of the Additional Plaintiffs issue financial identifiers, license financial data, or compete with CGS or FactSet in any market relevant to this case. *See generally id.*

### B. GIFDA Requests CUSIP Identifiers for the Additional Plaintiffs.

Plaintiffs allege that GIFDA, on behalf of the Additional Plaintiffs, submitted seven CUSIP requests to CGS over the course of several months in 2022 and acknowledge that CGS "approved four of the seven requests for public dissemination across its products and services" and "formally assigned at least three CUSIPs to GIFDA." *Id.* ¶¶ 46, 48a-d. Plaintiffs do not specify which applications for CUSIP identifiers are at issue in this litigation. Instead, Plaintiffs allege that Shah Mathias, "GIFDA's Founder and Chairman [] personally submitted seven CUSIP requests to CGS" between May and September 2022 and that Gerard Faulkner, Head of CGS Data Operations, confirmed receiving 17 CUSIP applications from GIFDA between 2022 and 2026. *See id.* ¶¶ 46-47; Faulkner Decl. ¶¶ 1, 16. Of those applications, 12 were for corporate bonds and five were for municipal bonds. Faulkner Decl. ¶ 17. All corporate requests occurred before November 24, 2024, and all municipal requests occurred on or after that date. *Id.* ¶¶ 18-27. In their FAC, Plaintiffs intermingle email communications from 2022 (pre-dating any municipal request) (e.g., FAC ¶¶ 49-50) and those after November 2024 (concerning only municipal requests) (e.g., *id.* ¶ 54). Plaintiffs do not allege what was Defendants' actual "unlawful refusal to activate CUSIP identifiers" or which "pending CUSIP application(s)" are those for which Plaintiffs seek relief. *See* FAC at 64 (Prayer for Relief). Nevertheless, all of the pertinent allegations concerning these Plaintiffs

involve applications submitted by GIFDA at some unknown time, not by the Additional Plaintiffs.

For more than a year, Defendants provided their reasoning for denying GIFDA's CUSIP applications and even presented GIFDA with further potential solutions to resolve those deficiencies. *Id.* ¶¶ 51-54. Specifically, Plaintiffs allege that CGS declined to issue some unspecified CUSIPs (potentially for the municipal bonds in November 2024) because GIFDA was "not a municipal issuer / CUSIP [is] not needed for a private sale." *Id.* ¶ 52. But, as Plaintiffs acknowledge, Defendants offered a solution to that issue where—if GIFDA could demonstrate a recognized underwriter or placement agent existed for these municipal bonds—then Defendants could issue the CUSIP identifiers. *Id.* ¶ 53. In response to Defendants' proposal, GIFDA represented that First Boston Global Custody and Trust Company ("First Boston") "would serve as underwriter and placement manager." *Id.* ¶ 54. But First Boston openly disavowed that it could serve as an underwriter for GIFDA on the alleged municipal bonds. *See id.* ("First Boston has never and does not intend to put itself forward as an underwriter of US Bonds."). And GIFDA has not alleged it managed to procure an underwriter for any of the at-issue securities, whatever they may be. *See id.*; *see generally* FAC.

Plaintiffs also allege that CGS "separately and unilaterally withdrew the CUSIP numbers previously assigned to Ameri Metro, Inc." *Id.* ¶ 56. But in making

that allegation, Plaintiffs do not allege: (1) when or how Ameri Metro sought issuance of the financial identifiers; (2) how many CUSIP identifiers Ameri Metro previously had; (3) when Ameri Metro received the CUSIPs; (4) when the CUSIP identifiers were allegedly withdrawn; or (5) which securities those CUSIPs allegedly identified. *See id.*

Ameri Metro and Malibu Homes also allege Defendants declined to enter an agreement not to "interfere" with certain identifiers. *Id.* ¶¶ 56, 58. The proposed agreement—sent by GIFDA's counsel to Defendants' counsel as a condition of consenting to a routine extension motion—does not mention Ameri Metro or Malibu Homes. *See id.* ¶ 58; ECF No. 14; ECF No. 35-6 at 151-55.[4]

### C. Plaintiffs' Alleged Harm and Barriers to Entry in the Relevant Market.

Plaintiffs allege that Defendants maintain a 100% market share in the alleged relevant market "for securities identification numbers required for U.S. capital market access," and further assert that denial of certain CUSIP identifiers "locked GIFDA out of U.S. capital markets for nearly four years." FAC ¶¶ 33, 70. Plaintiffs

[4] The Court may consider "documents whose contents are alleged in the complaint and whose authenticity no party questions," even though they are not "physically attached to the pleading." *Griffin v. Petrucci*, 2024 U.S. Dist. LEXIS 193199, at *9 (M.D. Pa. Oct. 24, 2024) (quoting *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002)).

do not allege that Defendants' conduct "locked" Additional Plaintiffs out of any alleged relevant market. *See generally* FAC.

Plaintiffs further claim that CGS's non-issuance of certain financial identifiers excluded "lawful securities from U.S. markets" and caused harm to "downstream infrastructure finance markets, and produced a chilling effect demonstrated by the withdrawal of investors who 'indicated that they cannot invest in securities lacking activated CUSIP identifiers.'" *Id.* ¶ 104 (no quoted source provided). Plaintiffs offer no allegations that explain what "downstream infrastructure finance markets" are.

Plaintiffs allege "barriers to entry" exist because there has been "wide adoption" of the CUSIP by entities like clearinghouses, exchanges, and governmental agencies. *Id.* ¶¶ 5, 34. Plaintiffs do not explain how Defendants have erected or otherwise facilitated any barrier to entry to prevent competing entities in "the market for securities identification numbers required for access to U.S. capital markets." *Id.* ¶ 2. At the same time, Plaintiffs also allege that other financial identifiers exist and compete with the CUSIP, such as FIGIs, SEDOLs, and ISINs. *Id.* ¶¶ 34-35. In fact, after CGS allegedly reversed one CUSIP issuance, "GIFDA obtained a replacement ISIN through ISIN.org, a lawful third-party provider." *Id.* ¶ 58.

Finally, Plaintiffs acknowledge in the FAC that they do not issue financial identifiers or otherwise compete with CGS or FactSet. *See id.* ¶ 7 (describing

plaintiffs as "six entities across five *infrastructure sectors*" (emphasis added)), ¶¶ 11-16 (describing Plaintiffs and their lines of business), 17-18 (alleged descriptions of Defendants with no overlapping business operations). Nor do they allege any plan to compete with CGS or FactSet. Moreover, Plaintiffs offer no allegation that CGS's decision not to issue a handful of CUSIP identifiers to GIFDA raised prices or lowered quality or quantity in any alleged relevant market. The FAC does not allege any actual or implied contract obligating CGS to assign or maintain CUSIP identifiers for any of GIFDA's (or the Additional Plaintiffs') purported securities. Furthermore, Plaintiffs' FAC relies on myriad conclusory allegations consisting solely of caselaw citations. *See, e.g.*, *id.* ¶¶ 1, 3 ("The CUSIP system meets the legal standard for an essential facility: it is controlled by a monopolist; market participants cannot practically or reasonably duplicate it; access has been denied to Plaintiffs; and it is feasible to provide access. *See MCI Communications Corp. v.* [*Am. Tel. & Tel. Co.*], 708 F.2d 1081, 1132-33 (7th Cir. 1983).").

## PROCEDURAL HISTORY

GIFDA filed its original complaint on February 27, 2026, and Defendants moved to dismiss that complaint on April 7, 2026. GIFDA filed its opposition to that motion on April 21, 2026. On April 28, 2026, GIFDA filed the FAC, amending its original complaint as of right to add five plaintiffs that all purport to be customers of GIFDA. ECF No. 31. On April 30, 2026, the Court dismissed Defendants' original

motion to dismiss as moot. ECF No. 39. Defendants filed the present motion to dismiss the FAC on May 12, 2026 (ECF No. 47).

## STATEMENT OF QUESTIONS INVOLVED

1) Does CGS's denial of GIFDA's applications for certain CUSIP identifiers establish an antitrust claim?

2) Do Plaintiffs lack antitrust standing?

3) Do Plaintiffs properly allege monopoly power in a cognizable antitrust relevant market?

4) Do Additional Plaintiffs lack Article III standing where this Court cannot redress their alleged speculative harm?

5) Should Plaintiffs' common law claims be dismissed where the FAC does not plausibly allege any wrongful conduct or an implied contract between the parties?

6) Should Plaintiffs' claim for a declaratory judgment be dismissed where that claim depends on the same deficiencies of Plaintiffs' other claims?

## LEGAL STANDARD

Under Rule 12(b)(6), a court takes all well-pleaded factual allegations as true and considers whether the pleading "state[s] a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Federal Rules "demand[] more than an

unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citation omitted). Mere "labels and conclusions," or "naked assertion[s] devoid of further factual enhancement" "will not do." *Id.* (citation and internal quotation marks omitted); *see Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009) (The complaint must "put forth allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary element."). Courts do not accept "unsupported conclusions and unwarranted inferences" or "legal conclusion[s] couched as a factual allegation[.]" *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (citations omitted).

Under Section 2 of the Sherman Act (15 U.S.C. § 2), "the possession of monopoly power will not be found unlawful unless it is accompanied by an element of anticompetitive conduct." *Verizon Commc'ns, Inc. v. Law Offs. of Curtis V. Trinko, LLP*, 540 U.S. 398, 407 (2004). To properly allege a violation of Section 2, in addition to alleging anticompetitive conduct, a plaintiff has "the burden of defining the relevant market." *Queen City Pizza v. Domino's Pizza*, 124 F.3d 430, 436 (3d Cir. 1997). A plaintiff must also allege harm to competition—i.e., "that 'the challenged conduct affected the prices, quantity or quality of goods or services, not just [its] own welfare.'" *McLoughlin v. Cantor Fitzgerald L.P.*, 162 F.4th 378, 388 (3d Cir. 2025) (quoting *Host Int'l, Inc. v. MarketPlace, PHL, LLC*, 32 F.4th 242, 250 (3d Cir. 2022)).

Plaintiffs invoking Section 4 of the Clayton Act (15 U.S.C. § 15) must allege antitrust standing, which is "far more limiting" than "the familiar formulation of Article III [standing.]" *Host Int'l*, 32 F.4th at 248-49. Antitrust standing assesses "whether the plaintiff is a proper party to bring a private antitrust action." *Id.* at 249 (quoting *Phila. Taxi Ass'n v. Uber Techs., Inc.*, 886 F.3d 332, 343 (3d Cir. 2018)). Of the five factors a court analyzes, one is "the directness of the injury[.]" *Id.* (quoting *In re Lower Lake Erie Iron Ore Antitrust Litig.*, 998 F.2d 1144, 1165-66 (3d Cir. 1993)). "[T]he absence of antitrust injury" is sufficient to dismiss a complaint under Rule 12(b)(6). *Id.* at 248-49.

"Article III of the United States Constitution limits the scope of federal judicial power to the adjudication of 'cases' and 'controversies.'" *Const. Party of Pa. v. Aichele*, 757 F.3d 347, 356–57 (3d Cir. 2014) (citing U.S. Const. Art. III, § 2). "A fundamental safeguard of that limitation is the doctrine of standing[,]" and "[o]nly a party with standing can invoke the jurisdiction of the federal courts." *Id.* at 357. "A motion to dismiss for lack of standing is 'properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter.'" *Murphy v. Thomas Jefferson Univ. Hosps., Inc.*, 2025 U.S. Dist. LEXIS 260338, at *5 (E.D. Pa. Dec. 16, 2025) (quoting *Const. Party of Pa.*, 757 F.3d at 357).

## ARGUMENT

### I. Plaintiffs Fail to Plead a Cognizable Antitrust Claim.[5]

#### A. CGS Has No Antitrust Duty to Deal with Plaintiffs.

The antitrust laws impose no requirement that CGS issue CUSIPs to GIFDA or any of the Additional Plaintiffs at GIFDA's behest. Courts have long recognized the "right of [a] trader or manufacturer engaged in an entirely private business[] freely to exercise his own independent discretion as to parties with whom he will deal." *Colgate*, 250 U.S. at 307 (refusing to extend duty to deal to firm's customers, wholesale, and retail dealers); *see Pac. Bell Tel. Co. v. linkLine Commc'ns, Inc.*, 555 U.S. 438, 448 (2009) ("As a general rule, businesses are free to choose the parties with whom they will deal[.]"). As a result, the antitrust laws permit CGS to establish terms upon which it will issue CUSIPs, along with its ability to exercise discretion with respect to those terms. *See Host Int'l*, 32 F.4th at 250 (no plausible antitrust claim where defendant "declined" to provide a customer with a contract); *see also Schuylkill Energy Res. v. Pa. Power & Light Co.*, 113 F.3d 405, 415 (3d Cir. 1997) (no plausible antitrust violation where conduct concerned dispute between purchaser and supplier). This reflects bedrock antitrust principles that "the purpose of antitrust

[5] Plaintiffs include both a monopolization claim (Count I) and a "Refusal to Deal / Essential Facilities Doctrine" claim (Count III). FAC ¶¶ 98-106, 109-12. But refusal to deal and essential facilities arguments are *types* of monopolization, not standalone claims. *Cf. Trinko*, 540 U.S. at 408 ("The leading case for § 2 liability *based on* refusal to cooperate with a rival. . . ." (emphasis added)).

laws [is] to foster competition," not to help firms obtain products on their preferred terms and conditions. *See Phila. Taxi*, 886 F.3d at 333-34; *see also Trinko*, 540 U.S. at 407-08.

Against the overwhelming weight of these authorities, Plaintiffs allege no facts supporting their "refusal to deal" claim. Under antitrust law, courts recognize narrow exceptions to firms' general right to unilaterally set the terms upon which they will deal such that the court will impose a unilateral duty to deal on an alleged monopolist. Those "refusal to deal" cases involve (1) a refusal to deal "*among competitors*," (2) where the competitors had a history of dealing, and (3) the dominant firm sacrificed "short-term profits to achieve an anticompetitive end." *Host Int'l*, 32 F.4th at 250 & n.7 (emphasis added) (first quoting *Trinko*, 540 U.S. at 407; then citing *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585 (1985)); *see Trinko*, 540 U.S. at 409 (refusal to deal cases are "at or near the outer boundary of § 2 liability."). As the FAC makes clear, none of those required elements have been alleged here.

Even though Defendants' original motion to dismiss highlighted these deficiencies, Plaintiffs still fail to allege any of these requirements or the required elements of a claim. Critically, Plaintiffs do not—and clearly cannot—allege they compete or plan to compete with CGS in the asserted relevant market, namely, "the market for securities identification numbers required for access to U.S. capital

markets." FAC ¶ 2. That is fundamental because—as the refusal to deal caselaw makes clear—there can be no antitrust claim unless the refusal to deal compromised a firm's ability to compete against the alleged monopolist. *See Otter Tail Power Co. v. United States*, 410 U.S. 366, 377-78 (1973) (holding the defendant used monopoly power "to foreclose *competition* or gain a *competitive* advantage, or to destroy a *competitor*" (emphasis added)). Given the narrow contours of the "refusal to deal" cases, this deficiency (i.e., no allegation to compete or potentially compete) alone is sufficient to dispense with Plaintiffs' antitrust claims.

Relatedly, Plaintiffs further fail to explain how CGS's refusal to deal with GIFDA harmed competition in any conceivable antitrust market. Nor do they allege that CGS sacrificed short-term profits by refusing to deal with GIFDA to achieve long-run monopoly power *and then recoup those losses*. Thus, no element of a cognizable refusal to deal Section 2 claim is present here. *See, e.g.*, *Aspen Skiing*, 472 U.S. 585 at 603-04, 610-11 (Defendant withdrew from a profitable joint marketing arrangement with the plaintiff that operated a rival ski area, refusing to resell plaintiff tickets); *Otter Tail*, 410 U.S. at 377-78 (refusing to sell power to municipalities seeking to build competing distribution infrastructure); *see also SEI Glob. Servs., Inc. v. SS&C Advent*, 496 F. Supp. 3d 883, 897-98 (E.D. Pa. 2020) (no refusal to deal where defendant ended a contractual relationship with competitor

plaintiff to pursue profits "it was unable to obtain because of the contractual terms limiting rate increases.").

For the same reasons, Plaintiffs do not plead an "essential facilities" claim. In this outdated line of cases, (1) a dominant firm controls something *its rivals* need to compete with the dominant firm and (2) denying this essential facility (3) allows the dominant firm to exclude *competition* from those rivals, which thereby (4) harms *competition* by reinforcing the dominant firm's monopoly power. *See SEI Glob. Servs.*, 496 F. Supp. 3d at 899 (quoting *Ideal Dairy Farms, Inc. v. John Labatt, Ltd.*, 90 F.3d 737, 748 (3d Cir. 1996)). But since Plaintiffs do not compete or plan to compete with CGS or FactSet, there can be no essential facilities claim as a matter of law. *See id.* at 898 (essential facility is only "implicated where a monopolist controls a facility that *its competitors* need access to if they are to compete effectively." (emphasis added)) (citation and internal quotation marks omitted); *Kerwin v. Parx Casino*, 802 F. App'x 723, 727 (3d Cir. 2020) (essential facility claim dismissed under Rule 12(b)(6) where plaintiff was "not a competitor of the defendant casinos."); *see also Ideal Dairy Farms*, 90 F.3d at 748 (essential facilities claim requires, inter alia, alleging "denial of the use of the facility *to a competitor*" (emphasis added) (citation omitted)).

Moreover, Plaintiffs cannot rely on *MCI Communications Corp. v. American Telephone & Telegraph Co.*, 708 F.2d 1081 (7th Cir. 1983), to salvage their claims.

FAC ¶¶ 3, 110. *MCI* concerned a defendant's "complete control over the local distribution facilities that" the plaintiff needed to compete against the defendant. 708 F.2d at 1133. Because *MCI* also involved a refusal to deal with a competitor, it is clearly distinguishable from Plaintiffs' allegations, which concern only a limited refusal to deal with GIFDA, a potential customer that does not compete, or have any plans to compete, with CGS or FactSet. Faced with these fundamental deficiencies, Plaintiffs litter the FAC with a host of improper legal arguments.[6] But these do nothing to salvage Plaintiffs' claims as a matter of law because "the factual and legal elements of a claim should be separated," and the Court should not accept as true "a legal conclusion couched as a factual allegation." *Fowler*, 578 F.3d at 210; *accord Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013).

Furthermore, although Plaintiffs emphasize "Defendants' [s]hifting [p]retextual [j]ustifications" (FAC ¶¶ 51-63), those allegations are irrelevant to the defects this motion raises. Even taking as true Plaintiffs' allegations, a court need not weigh a defendant's procompetitive justifications or plaintiff's rebuttal *unless and until* the plaintiff has first properly alleged a viable antitrust claim, including harm to competition. *Mylan Pharms. Inc. v. Warner Chilcott Pub. Ltd.*, 838 F.3d 421, 438 (3d Cir. 2016) (citing *United States v. Microsoft Corp.*, 253 F.3d 34, 58-60

[6] *See, e.g.*, FAC ¶ 37 (claiming there is a "regulatory vacuum" and citing *Trinko*); *id.* ¶ 63 (claiming alleged pretextual conduct satisfies the standard of *Aspen Skiing*).

(D.C. Cir. 2001)). Plaintiffs had two opportunities to state a viable antitrust claim. They failed both times. Put differently, whether CGS had a legitimate reason to deny CUSIPs to GIFDA only becomes relevant if there is a legally cognizable antitrust claim on the table. In that instance, why the alleged monopolist denied a rival (or potential rival) access to an input could be a relevant consideration. But here, there is no competitive dynamic between the parties, no antitrust claim, and CGS's entirely legitimate rationale for its decisions is simply not relevant to this motion. This Court should "avoid the siren songs of illusory harm" and instead find that Plaintiffs, like in *Host International*, "do[] not and . . . cannot state a claim for relief." *Host Int'l*, 32 F.4th at 252.

Finally, Plaintiffs cannot rescue their claims by pointing yet again to other litigation that has nothing to do with this case. *See, e.g.*, FAC ¶¶ 6, 36. Those matters concern *licensing* and *distributing* CGS data to financial institutions, not the alleged issuance market for "securities identification numbers." *Id.* ¶¶ 33, 36(a); *see also Dinosaur Fin. Grp. LLC v. S&P Glob., Inc.*, 2023 U.S. Dist. LEXIS 122036, at *10 (S.D.N.Y. July 14, 2023) (plaintiffs *allege* that defendants forced "CUSIP Users to enter into license agreements with . . . S&P (and now FactSet)[.]"). Those cases do nothing to resurrect Plaintiffs' deficient antitrust allegations in a completely different relevant market. *See, e.g.*, *Medpointe Healthcare Inc. v. Hi-Tech Pharmacal Co.*, 380 F. Supp. 2d 457, 466 (D.N.J. 2005) (trial proceedings involving one patent had

no bearing on preliminary injunction hearings involving separate patent). Lest there be any doubt, whereas Plaintiffs moor their case in refusal-to-deal law (e.g., FAC Count III), plaintiffs in *Dinosaur Financial* disavowed that framing. 2023 U.S. Dist. LEXIS 122036, at *38 (noting that plaintiffs' claim "is not a run-of-the-mill unilateral refusal to deal case").[7]

### B. Plaintiffs Have Not Alleged Antitrust Standing.

Plaintiffs lack antitrust standing because they allege harm only to themselves, not to competition. Antitrust standing "is distinct from Article III standing" and requires, among other things, that plaintiffs allege the injury suffered is "of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." *Phila. Taxi*, 886 F.3d at 343. To that end, Plaintiffs must allege "that the challenged conduct affected the prices, quantity or quality" of the relevant product, meaning they must allege harm to competition and "not just [their] own welfare." *Host Int'l*, 32 F.4th at 250 (quoting *Matthews v. Lancaster Gen. Hosp.*, 87 F.3d 624, 641 (3d Cir. 1997)); *A&B Campbell Fam. LLC v. Williams Partners, L.P.*, 2025 U.S. Dist. LEXIS 263398, at *17 (M.D. Pa. Dec. 22, 2025)

[7] GIFDA further mischaracterizes these irrelevant cases. For example, the court in *Dinosaur Financial* did not find that "CGS's licensing regime has allowed it to extract 'monopoly rents disguised as "license fees."'" FAC ¶ 6. Instead, it simply described plaintiffs' allegations as part of its analysis under Rule 12(b)(6). *See* 2023 U.S. Dist. LEXIS 122036, at *20 (quoting plaintiff's complaint). That court also held "the mere fact that Plaintiffs and other CUSIP Users are required to pay a fee to Defendants does not necessarily present an antitrust problem." *Id.* at *48-49.

(finding no antitrust standing where plaintiff failed to allege reduced competition apart from its own injury).

Plaintiffs offer no allegations demonstrating that the conduct at issue—CGS's denial of *GIFDA's* request for certain CUSIP identifiers—harmed competition in the alleged relevant market, "the market for securities identification numbers required for access to U.S. capital markets." FAC ¶ 99. Instead, they only allege harm to themselves, and that is insufficient.

Plaintiffs seek to circumvent this central antitrust tenet by claiming the alleged conduct led to "reduced output in the downstream markets for infrastructure finance." *Id.* ¶ 104. That allegation is insufficient because (1) it is conclusory, and (2) it involves a supposed reduction in competition outside of the alleged relevant market for securities identifiers. *See Host Int'l*, 32 F.4th at 252 (an antitrust injury "'requires every plaintiff to show that its loss comes from acts that reduce output or raise prices' *in the relevant market*.") (quoting C*hi. Pro. Sports Ltd. P'ship v. Nat'l Basketball Ass'n*, 961 F.2d 667, 670 (7th Cir. 1992)) (emphasis added).

Similarly, Plaintiffs allege that the denial of CUSIP identifiers led to a reduced "quantity of securities available to institutional investors" (i.e., overall quantity reduction solely because GIFDA lacks CUSIPs). *See* FAC ¶ 104. This allegation fails for the same reasons—it is conclusory and does not concern the relevant market for securities identifiers. Not only that, "[a]n individual plaintiff personally

aggrieved by an alleged anti-competitive [action] has not suffered an antitrust injury *unless the activity has a wider impact on the competitive market*." *Irish v. Ferguson*, 970 F. Supp. 2d 317, 365 (M.D. Pa. 2013) (quoting *Eichorn v. AT&T Corp.*, 248 F.3d 131, 140 (3d Cir. 2001)) (emphasis added).

Plaintiffs' citation to *Hanover 3201 Realty, LLC v. Village Supermarkets, Inc.*, 806 F.3d 162 (3d Cir. 2015) is misplaced. FAC ¶ 106. In that case, defendants, a grocery store chain and real estate company, imposed high costs and various procedural burdens on the plaintiff, a different real estate company, to prevent *a competing grocery store* from entering the market. 806 F.3d at 174. As a result, the plaintiff, a real estate company working with the rival grocery store, had sufficiently alleged an antitrust injury since its "injury was inextricably intertwined" with the defendants' anticompetitive conduct designed to quash the rival grocery store. *Id.* at 176. Accordingly, that case involved allegations of harm to competition and the plaintiff's injuries stemming from that harm to the overall marketplace. *Id.* The allegations here bear no resemblance to those facts, because Plaintiffs do not compete or plan to compete with CGS or FactSet.

And, for the same reason, *Blue Shield of Virginia v. McCready*, 457 U.S. 465 (1982) is also inapplicable. *See* FAC ¶ 104. There, a subscriber to health insurance challenged the plan's policy that reimbursed psychotherapy services when provided by a psychiatrist, but not a psychologist. 457 U.S. at 467. Even though the scheme

was targeted at psychologists and not patients, the patient's injury (her inability to seek care from a psychologist) was "inextricably intertwined" with the exclusion suffered by psychologists, thus conferring antitrust standing. *Id.* at 484. Plaintiffs allege no such exclusion creating a cognizable harm to competition and therefore have not alleged antitrust standing.

The Additional Plaintiffs have not alleged antitrust standing for a separate reason—their alleged injuries are derivative of GIFDA's alleged injury. According to the FAC, other than one mention of an unknown number of CUSIP identifiers applied for at unknown times and withdrawn at unknown dates (FAC ¶ 56), none of the Additional Plaintiffs applied for a CUSIP to CGS or had any direct contact with it. *See id.* ¶¶ 78-91. Instead, their CUSIP applications were completed by GIFDA, who handled all contact with CGS. *See id.* Therefore, the Additional Plaintiffs' alleged injuries are entirely derivative of GIFDA's alleged injuries, which is insufficient to confer antitrust standing. *See Warnock v. NFL*, 154 F. App'x 291, 294 (3d Cir. 2005) (no antitrust standing where plaintiff was not a "competitor or customer" to defendant); *see also Camaisa v. Pharm. Rsch. Assocs.*, 2022 U.S. Dist. LEXIS 50803, at *16-17 (D. Del. Mar. 22, 2022) (finding no antitrust standing where plaintiff alleged no anticompetitive effects because "their status would have been the same even if [the defendant] did not engage in their alleged anticompetitive actions").

### C. Plaintiffs Do Not Allege that CGS or FactSet Has Monopoly Power in a Properly Defined Relevant Market.

Plaintiffs likewise fail to allege that either CGS or FactSet has monopoly power in a cognizable relevant market. Monopoly power is more than market share—it is "the power to control prices or exclude competition" in a properly defined antitrust market. *United States v. E.I. du Pont de Nemours & Co.*, 351 U.S. 377, 391 (1956). Plaintiffs offer only a conclusory statement that Defendants have "exclude[d] lawful market participants." FAC ¶ 101. But denying a product to a customer (GIFDA) is an insufficient allegation to support a claim that the supposed anticompetitive conduct excluded a competitor or potential competitor. *See Schuylkill Energy*, 113 F.3d at 415 (holding that monopoly power for monopolization and attempted monopolization cases requires allegations that the defendant "in some way acted *to exclude* [a plaintiff] *as a competitor*" (emphasis added)). Therefore, Plaintiffs' allegations are insufficient to allege monopoly power. Instead, Plaintiffs must allege that CGS and/or FactSet had the power to exclude *competition* from the relevant market. *See id.* (allegations of market power must allege exclusion of competitor). Plaintiffs have not met this threshold requirement.

To allege that CGS possesses monopoly power, Plaintiffs also have "the burden of defining a relevant market." *Queen City Pizza*, 124 F.3d at 436. "The outer boundaries of a product market are determined by the reasonable interchangeability of use or the cross-elasticity of demand between the product itself and substitutes for

it." *Id.* (citations omitted). Plaintiffs—fatally—define a single-product market for CUSIPs and do not include alternative financial identifiers that the FAC *acknowledges exist*, such as FIGIs, SEDOLs, ISINs, and Ticker symbols. *See* FAC ¶¶ 4, 35 (alleging Defendants have "100% of the relevant market," *despite also alleging* alternative financial identifiers). Complaints in this Circuit have similarly been dismissed for defining facially implausible markets that "clearly do[] not encompass all interchangeable substitute products even when all factual inferences are granted in plaintiff's favor[.]" *Queen City Pizza*, 124 F.3d at 436-37 (collecting cases).

Standing alone, Plaintiffs' allegation that only the "DTC, the SEC, or the MSRB" accept CUSIPs is insufficient to support their single-product market, one where Plaintiffs do not define or even explain what "access to U.S. capital markets" means. *See* FAC ¶ 2. In this regard, "standards are not markets and do not represent particular products." *Godo Kaisha IP Bridge 1 v. TCL Comm'n Tech. Holdings Ltd.*, 2018 U.S. Dist. LEXIS 246890, at *18-19 (D. Del. Feb. 12, 2018), *R&R adopted*, 2018 U.S. Dist. LEXIS 38506 (D. Del. Mar. 8, 2018); *see id.* at *19 ("Simply labeling a standard as 'the relevant market' does not alone adequately plead a relevant market for purposes of a Sherman Act claim.").

Additionally, even if Plaintiffs plausibly alleged a relevant market (which they do not), high market share alone is insufficient to allege monopoly power. Rather,

to allege such power, "something more" than "market share alone" is required, such as "barriers to entry" indicating the dominant firm has durable market power. *Crossroads Cogeneration Corp. v. Orange & Rockland Utils., Inc.*, 159 F.3d 129, 141 (3d Cir. 1998). The FAC's references to "barriers to entry" are conclusory; they state (with no supporting allegations) that competitors cannot enter the market, but without explaining *how* or *why*. FAC ¶¶ 3-5, 34. These allegations are further belied by Plaintiffs' acknowledgment that competing identifiers do exist. *Id.* ¶ 34. Even more telling, GIFDA admits it "*obtained a replacement ISIN* through ISIN.org." *Id.* ¶ 58 (emphasis added). That admission alone defeats Plaintiffs' alleged single-product relevant market.

Finally, that other entities have adopted and favor the CUSIP is of no consequence, because "the plaintiff must show a barrier to entry that prevents competition. If rivals may design and offer a similar package for a similar cost, there is no barrier, and without a barrier there is no market power." *Hudson's Bay Co. Fur Sales, Inc. v. Am. Legend Cooperative*, 651 F. Supp. 819, 842 (D.N.J. 1986) (quoting *U.S. Steel Corp. v. Fortner Enters.*, 429 U.S. 610, 622 (1977)); *see also Prime Aid Pharm. Corp. v. Humana Inc.*, 2017 U.S. Dist. LEXIS 125667, at *6-7 (D.N.J. Aug. 9, 2017) ("Product market definition turns on the existence of close substitutes for a particular product, *not on the ability of any particular consumer to switch effortlessly to such substitutes*." (emphasis added) (quoting *Brokerage Concepts, Inc. v. U.S.*

*Healthcare, Inc.*, 140 F.3d 494, 514 (3d Cir. 1998)). Thus—as Plaintiffs implicitly acknowledge (*see* FAC ¶ 34)—since rivals can "design and offer a similar package for a similar cost, there is no barrier," and the Court should dismiss the FAC.[8]

## II. The Additional Plaintiffs Lack Article III Standing.

As they are a step removed from the allegations, the Additional Plaintiffs also lack Article III standing, making their alleged harm indirect and derivative, and, therefore, not redressable. Article III standing requires "(1) an injury in fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a like[lihood] that the injury will be redressed by a favorable decision." *Tugboat Invs. LLC v. Bank of Am., N.A.*, 2023 U.S. Dist. LEXIS 38184, at *4 (E.D. Pa. Mar. 6, 2023) (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157-58 (2014)). "The causation element requires that a plaintiff's alleged injury be 'fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court.'" *Id.* (quoting *Lujan v. Defs. of Wildlife*,

---

[8] Plaintiffs' attempted monopolization claim fails for the same reasons. An attempted monopolization claim requires proof "(1) that the defendant has engaged in predatory or anticompetitive conduct with (2) a specific intent to monopolize and (3) a dangerous probability of achieving monopoly power." *Phila. Taxi Ass'n*, 886 F.3d at 339 (citation omitted). Plaintiffs have not alleged any anticompetitive conduct (*supra*); Plaintiffs make no allegation that Defendants had any specific intent to monopolize any market; and Plaintiffs have not sufficiently alleged a "dangerous probability" of gaining monopoly power (*see supra*).

Likewise, Plaintiffs' declaratory judgment claim fails because it is predicated on the same implausible, deficient allegations.

504 U.S. 555, 560 (1992)). And, importantly, the plaintiff must also show its harm is redressable such that "it is 'likely, as opposed to merely speculative,' that their alleged injury will be redressed by a favorable decision." *Id.* at *5 (quoting *Lujan*, 504 U.S. at 561).

At bottom, Additional Plaintiffs allege injuries that this Court cannot redress. The FAC alleges that GIFDA submitted CUSIP applications on behalf of the Additional Plaintiffs and that CGS declined to issue some CUSIP identifiers to GIFDA. FAC ¶¶ 73-91. By their own allegations, Additional Plaintiffs *only* interact with GIFDA, not CGS or FactSet. Thus, even if the Court somehow granted GIFDA full relief and GIFDA received CUSIP identifiers (for unspecified securities), that would not redress Additional Plaintiffs' alleged harm, which allegedly concerns GIFDA's ability to achieve financing, not simply the issuance of CUSIP identifiers to GIFDA. *See, e.g.*, *id.* ¶ 77 (Ameri Metro's harm tied to GIFDA issuing "revenue bonds upon which the entire financing depends"); *id.* ¶ 89 (claiming that HSR Technologies is harmed because it needs "bond financing."). And to the extent harm stems from revoked government registrations, issuing CUSIP identifiers will not "reverse an SEC revocation, restore a trading symbol, reconstitute a Form 211 sponsorship, or rebuild thirteen years of corporate infrastructure." *Id.* ¶ 74. Thus, Additional Plaintiffs lack standing because they "have a redressability problem," as

"their injuries cannot be cured by a favorable decision from this Court." *United States v. Terry*, 2023 U.S. Dist. LEXIS 163609, at *6 (W.D. Pa. Sept. 14, 2023).

Worse yet, Ameri Metro and Malibu Homes seek to claim injury from a litigation proposal *made by GIFDA's counsel during the pendency of this litigation*. As background, Defendants' counsel sought concurrence from GIFDA for an extension to respond to the original complaint and preliminary injunction motion. In response to that request for an extension of time in March 2026 (predating the Additional Plaintiffs joining this matter), GIFDA requested that Defendants enter into "an Unconditional Noninterference Agreement." ECF No. 14 at 2. Plaintiffs now allege this proposed agreement was presented "to refrain from interfering with Malibu Homes' existing ISIN" and "from interfering with [Ameri Metro's] existing CUSIP numbers." FAC ¶¶ 13, 56; *see also* ECF No. 14 at 2. The proposed agreement also included a $5 billion liquidated damages provision, which "CGS expressly refused." FAC ¶ 56; ECF No. 35-6 at 151-55. Communications between attorneys about scheduling matters during an ongoing litigation cannot be used to concoct allegations to support a deficient complaint. Moreover, these "allegations" do not support any potential injury and in no way confer standing on any plaintiff. This Court should ignore them.[9]

---

[9] Ameri Metro also alleges CGS "unilaterally withdrew" its previous CUSIPs, which "triggered a cascading collapse[.]" FAC ¶ 12. But this does not confer standing because, again, issuing CUSIP identifiers would not redress Ameri Metro's alleged

## III. Plaintiffs' Common Law Claims Also Fail.

Plaintiffs allege tortious interference and quasi-contract claims. FAC Counts IV-VI. After amendment, Plaintiffs now allege Pennsylvania law applies. *Id.* ¶ 21. Those claims still fail.

### A. The Amended Complaint Does Not Plausibly Allege Tortious Interference.

Plaintiffs' tortious interference claims fail because they are duplicative of the monopolization allegations. "Under Pennsylvania law, to state a claim for tortious interference with an existing or prospective contract, Plaintiffs must plead . . . the absence of privilege or justification on the part of the defendant." *Phila. Taxi Ass'n v. Uber Techs., Inc.*, 218 F. Supp. 3d 389, 395 (E.D. Pa. 2016) (quoting *Acumed LLC v. Advanced Surgical Services, Inc.*, 561 F.3d 199, 212 (3d Cir. 2009)). This element is not met if, for example, the defendant "does not employ wrongful means," or its

---

harm from it "fail[ing] to comply with [the] Exchange Act," or losing "Form 211 sponsorship[.]" *Id.* ¶¶ 12, 74. Besides, Ameri Metro may have lost its SEC registration for other reasons. *See SEC v. Mathias*, No. 1:25-cv-02313 (D.D.C. filed July 18, 2025), ECF No. 1 ¶¶ 2-6, 63.

Additionally, Ameri Metro's claims are simply threadbare (and thus implausible) where it does not allege *what* CUSIP(s) it previously had, when they were issued, when they were revoked, or anything else. *See* FAC ¶ 12. Ameri Metro and GIFDA cannot both plausibly have applied for the same CUSIPs. *Compare id.* ¶ 12 (Ameri Metro authorized CUSIP applications on July 14, 2022), *with id.* ¶ 46 ("GIFDA's Founder and Chairman" submitted CUSIP requests between May 17 and September 16, 2022).

"action does not create or continue an unlawful restraint of trade," i.e., an antitrust violation. *Acumed*, 561 F.3d at 215 (quoting Restatement (Second) of Torts § 768).

Plaintiffs have not alleged any wrongful means which, under Pennsylvania law, requires something like "physical violence, fraud, civil suits and criminal prosecutions," or something else "that was actionable on a basis independent of the interference claim." *Id.* In other words, Plaintiffs' tortious interference claims rely entirely on their argument that CGS has created "an unlawful restraint of trade" by virtue of declining to issue certain financial identifiers; therefore, these claims fail for the same reasons. *See id.*

### B. The Amended Complaint Does Not Plausibly Allege Breach of Implied Contract.

In Pennsylvania, "there is no implied covenant of good faith and fair dealing claim *separate* from a breach of contract claim." *Cummings v. Allstate Ins. Co.*, 832 F. Supp. 2d 469, 473-74 (E.D. Pa. 2011) (emphasis added). An implied contract is the same as a written one, except that the defendant's "intention, instead of being expressed in words, is inferred from acts in the light of the surrounding circumstances." *AlfaModess Logistics, LLC v. Catalent Pharma Sols., LLC*, 2014 U.S. Dist. LEXIS 128469, at *95 (E.D. Pa. Sept. 11, 2014) (citation omitted). "[I]n order for there to be an enforceable contract, the nature and extent of its obligation must be certain; the parties themselves must agree upon the material and necessary details of the bargain[.]" *Id.* (citation omitted).

Here, Plaintiffs offer no allegations that CGS obliged itself to issue any CUSIP identifiers, and if so, to never withdraw them. Accepting Plaintiffs' argument as true—that an implied contract exists because Defendants previously issued CUSIPs—would require a corporate entity to always accept a customer's future business on any terms if the entity previously accepted such business. That defies common sense and the law. *See Maude v. City of Philadelphia*, 2018 U.S. Dist. LEXIS 243518, at *3-4 n.1 (E.D. Pa. Oct. 25, 2018) (no implied contract where a plaintiff merely alleges it "arose from the course of conduct" between the parties). Therefore, Plaintiffs have not plausibly alleged any implied contract exists.

## IV. CGS Is Still Not an Appropriate Defendant.

CGS is not a separate legal entity but rather a business unit within FactSet. ECF No. 19. Even Plaintiffs admit so. FAC ¶ 17. As a result, it is not a proper defendant and must be dismissed from this litigation. Fed. R. Civ. P. 17(b); *see In re Fed.-Mogul Glob. Inc.*, 411 B.R. 148, 164 (Bankr. D. Del. 2008) ("Operating divisions of corporations that are not themselves incorporated" are "clusters of assets" that "lack the capacity to sue or be sued."). Plaintiffs' claim that Defendants have "treated CGS as a named defendant" (FAC ¶ 17) bears no weight—counsel must vigorously defend CGS until dismissed for Plaintiffs continuing to erroneously name it as a defendant. *Cf. Int'l Plastics & Equip. Corp. v. HPM*, 2008 U.S. Dist. LEXIS 68520, at *30-31 (W.D. Pa. Aug. 7, 2008) (dismissing "a mere division" as

"not an entity capable of being sued" after being represented through *summary judgment*). Because it cannot be sued, CGS is not a proper defendant and should be dismissed from this case.

## V. Plaintiffs' Complaint Should Be Dismissed with Prejudice.

The Court may dismiss Plaintiffs' complaint "without leave to amend 'on the grounds of bad faith, undue delay, prejudice, or futility.'" *Prukala v. Chase Bank, N.A.*, 2020 U.S. Dist. LEXIS 162352, at *11 (M.D. Pa. Sept. 4, 2020) (quoting *Alston v. Parker*, 363 F.3d 229, 236 (3d Cir. 2004)); *see also Mathias v. Kershaw*, 2010 U.S. Dist. LEXIS 30163, at *12 (M.D. Pa. Mar. 29, 2010) ("Because Plaintiff cannot state a claim for official oppression and amendment would be futile, the court will grant the Motion to Dismiss as to Count II with prejudice."). "An amendment is futile if the amended complaint would not survive a motion to dismiss for failure to state a claim upon which relief could be granted." *44 Hummelstown Assocs., LLC v. Am. Select Ins. Co.*, 542 F. Supp. 3d 330, 342 (M.D. Pa. 2021) (quoting *Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000)).

The law is clear: "The purpose of the [Sherman] Act is not to protect businesses from the working of the market; it is to protect the public from the failure of the market. The law directs itself . . . against conduct which unfairly tends to destroy competition itself." *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 458 (1993). Plaintiffs have twice failed to allege viable antitrust claims. It is therefore

clear that they cannot allege that they compete or plan to compete with Defendants, let alone that the competitive process was harmed. In no circumstance could they allege a viable monopolization or attempted monopolization claim, and any amendment would be futile.

The state law claims cannot be salvaged, either. No tortious interference claim can proceed that is predicated on Plaintiffs' antitrust claims. Likewise, there is no implied contract. Previously applying for and receiving a CUSIP in no way constitutes a binding contract between two parties that all future applications must also be approved. No amendment can cure those deficiencies. Those claims should also be dismissed with prejudice.

## CONCLUSION

For the foregoing reasons, this Court should dismiss Plaintiffs' complaint in its entirety with prejudice. Defendants respectfully request oral argument on this motion.[10]

[10] Pursuant to ECF No. 46, the Court has ordered an evidentiary hearing on Plaintiffs' Motion for a Preliminary Injunction for July 30-31, 2026. If the Court's schedule permits, Defendants respectfully request that the Court hold an oral argument on this motion to dismiss prior to the July hearing.

Respectfully submitted,

Dated: May 21, 2026

*/s/ Douglas F. Johnson*

Douglas F. Johnson (PA #40036)
Charles P. Montgomery (PA #309822)
EARP COHN P.C.
121 South Broad Street, Suite 1720
Philadelphia, PA 19107
(215) 963-9520
djohnson@earpcohn.com
cmontgomery@earpcohn.com

*/s/ James Kovacs*

James Kovacs (DC 1046777) (*pro hac vice*)
J. Wyatt Fore (VA 89168) (*pro hac vice*)
**SHINDER CANTOR LERNER LLP**
600 14th Street NW, 5th Fl.
Washington, DC 20005
Phone: (646) 960-8612
james@scl-llp.com
wyatt@scl-llp.com

Jeffrey I. Shinder (NY 2633196) (*pro hac vice*)
Michael E. Keramidas (PA 331704)*
**SHINDER CANTOR LERNER LLP**
14 Penn Plaza, Fl. 19
New York, NY 10122
Phone: (646) 960-8637
jeffrey@scl-llp.com
mkeramidas@scl-llp.com
**Admitted to practice in Pennsylvania. Not admitted in New York.*

*Attorneys for Defendants CUSIP Global Services and FactSet Research Systems Inc.*

## WORD COUNT CERTIFICATION

In accordance with Local Rule 7.8 and this Court's Order increasing the word limit to 8,750 words (ECF No. 51), I certify that Defendants' Brief in Support of Motion to Dismiss the First Amended Complaint is 8,190 words using Microsoft Word's word count feature.

By: */s/ Michael E. Keramidas*
Michael E. Keramidas